¶ 32. I agree with most of what the majority says, but, in my view, a correct assessment of Moulds's adjusted gross makes no difference here, given the fact that it has no bearing on his ability to pay and the chancellor clearly based his award upon the needs of the child. Accordingly, I respectfully dissent from that portion of today's disposition which reverses and remands this case on that issue.
¶ 33. The needs of the child will not change with a correct analysis of "adjusted gross." The chancellor's award was $1,000 per month. Clearly, the error in calculating adjusted gross had no impact upon the chancellor's conclusion concerning the reasonable needs of the child. There was room, within the guidelines, to give a greater amount of support had the chancellor been of the view that the reasonable needs of the child demanded as much.
¶ 34. Justice Diaz's suggestion that child support should be analogized to alimony and adjusted because support comes to one percent of Moulds's income is, in my view, misguided. Child support levels are *Page 231 
established, in many instances, where there is no "accustomed" standard of living. Moreover, alimony contains elements of a division of assets after a termination of the marital partnership inappropriate to the parent child relationship. Child support payments are geared to the needs of the child and the parents' obligation to provide for those needs. There is no requirement in law that a parent transfer wealth to a child.
¶ 35. While it is true that reasonable needs of the child of one who is affluent may be more in some instances than the child of one less able to afford the same choices, those differences may not be assumed. For example, a child of an affluent parent who has started a private school and developed a level of comfort there may be deemed to reasonably need to continue. A child with special educational needs may reasonably need additional educational or other expenditures which might be out of reach for a poor but easily within the capability of one who is affluent.
¶ 36. That is not shown to be the case here. The guidelines establish an annual income of $50,000 as the presumptive maximum level for child support at a level of 14% of income for one child and 24% for four children. That would provide child support payment of $567 per month and $1,000 per month for four. For incomes in excess of that $50,000 amount, the court is required to make an explicit finding as to whether the guideline is appropriate.
¶ 37. The chancellor here explicitly calculated the amount that application of the guidelines would produce for four children, $92,472.68 or $ 23,118.17 per child for the four children Moulds is required to support. The chancellor's analysis showed monthly income of $18,000 afterdeducting for Moulds's living expenses, making even that amount well within Moulds's ability to pay. The court then considered the plaintiff'sestimate of the child's needs, $664.29 per month. The court concluded that:
 [i]f the Court applied the guidelines, the plaintiff would be awarded the sum of approximately $1900 a month for child support. There has been no testimony which justifies the child support to be $1900 per month. Therefore, the Court finds that the application of the guidelines in this case are unjust and inappropriate due to the fee (sic) presented as to the needs of the child.
¶ 38. The chancellor fully considered the needs of the child and a guideline figure well within that which Moulds could afford given the income figures that the chancellor used. The chancellor found that the guideline figure was excessive. No consideration of a greater income can change that fact. There is no basis for reversal on this issue. I would affirm the judgment of the chancery court as to child support.
McRAE, P.J., JOINS THIS OPINION.